James B. STANLEY, Plaintiff-Appellee,

v.

UNITED STATES of America, and Joseph R. Bertino, et al., Defendants-Appellants.

No. 84–5273.

United States Court of Appeals, Eleventh Circuit.

April 21, 1986.

Rehearing and Rehearing En Banc Denied June 17, 1986.

Mark W. Pennak, Dept. of Justice, Civ. Div., Barbara L. Herwig, Washington, D.C., for Federal appellants.

James Mingle, Asst. Atty. Gen., Baltimore, Md., for State appellants.

Richard A. Kupfer, Cone, Wagner, Nugent, Johnson, Hazouri & Roth, P.A., West Palm Beach, Fla., for plaintiff-appellee.

Before HATCHETT, Circuit Judge, HENDERSON *, Senior Circuit Judge, and ALLGOOD **, Senior District Judge:

HATCHETT, Circuit Judge:

We are again faced with the task of defining the limits of the doctrine first announced in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), to determine whether a former serviceman may maintain this lawsuit against federal officials, both civilian and military, for injuries suffered before or after his discharge from military service. In affirming, we permit the lawsuit.

Appellants, several military personnel and civilians, appeal the district court's finding that the complaint in this case states a cause of action under *Bivens v. Six Unknown Named Agents of Federal*

---

* See Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

*Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) and that the action is not barred by *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983).[1]

## FACTS

In February, 1958, appellee, James B. Stanley was a master sergeant in the United States Army. Stanley volunteered to participate in a program purportedly designed to develop and test military equipment and protective clothing for use during chemical warfare. On four occasions during the program, unknown to him, Army officials and others gave Stanley lysergic acid diethylamide (LSD). After the 1958 LSD experiments, Stanley served in the Army for eleven years. The Army discharged him in 1969. The Army never informed Stanley that he had been administered LSD during the 1958 program. Stanley did not become aware of the LSD experiments until December, 1975, when the Department of the Army sent him a letter soliciting his participation in a follow-up study of persons who had been subjects of the 1958 experiments.

## PROCEDURAL HISTORY

The original complaint in this case was filed on May 8, 1978, and consisted of claims against the United States under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671–2680 (West 1984), (FTCA), for negligent administration of the LSD experiments.[2] The district court granted the government's motion for summary judgment relying on the doctrine enunciated in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). Under the *Feres* doctrine, "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres,* 340 U.S. at 146, 71 S.Ct. at 159.

On appeal, the former Fifth Circuit held that the district court's application of the *Feres* doctrine was correct insofar as it precluded Stanley's claim for injuries sustained while he was in military service, but that the district court had improperly granted the government's motion for summary judgment. According to the former Fifth Circuit, the proper disposition of the case was dismissal of the complaint for lack of subject matter jurisdiction. *Stanley v. CIA,* 639 F.2d 1146 (5th Cir. Unit B 1981) (*Stanley I*). The case was remanded to the district court for consideration of any amendment that Stanley might offer to cure the jurisdictional defect by alleging damages for injuries which occurred after his discharge from the Army.[3]

On July 21, 1981, Stanley amended his complaint to allege both a post-discharge claim for negligence under the FTCA and a constitutional tort claim under *Bivens.* On October 15, 1982, the district court dismissed Stanley's post-discharge FTCA and

1. The individual defendants are Joseph R. Bertino, M.D.; H.D. Collier; Albert Dreisbach; Bernard G. Elfert; Sidney Gottlieb, M.D.; and Van Sim, M.D., all of whom are or were federal employees or officers of the United States Army. Richard Helms, former director of the Central Intelligence Agency is also named as a defendant. The individual state defendants who were added are the Board of Regents of the University of Maryland; Gerald Klee, M.D.; and Walter Weintraub, M.D. Klee and Weintraub were physicians in the psychiatric residency program at the University of Maryland Hospital and participated in the 1958 experiments under a research contract between the United States Army and the University of Maryland.

2. Stanley's original complaint named the Central Intelligence Agency, the United States Department of Defense, and the United States Army as defendants. The complaint was amended to name the United States Government as the proper party defendant under the Federal Tort Claims Act. "Unknown individual federal agents and officers" were also named as defendants.

3. The former Fifth Circuit expressly rejected the government's argument that it would be futile to remand the action because any amendment which Stanley might make, including any constitutional claim, would be barred by *Feres.* The court declined to express any opinion on the merits of any new claims which Stanley might assert, but found that "Stanley has at least a colorable constitutional claim based on *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 69 (1971)." *Stanley I,* 639 F.2d at 1159 (citations omitted).

*Bivens* claims against the United States Government. The district court held, however, that Stanley had stated a *Bivens* action against the individual federal agents and officers who participated in the LSD experiments, for violation of his constitutional "rights of privacy and bodily integrity, and of the right of an individual to control his mind, his private thoughts and his intellectual process." *Stanley v. United States,* 549 F.Supp. 327, 331 (S.D.Fla. 1982) (*Stanley II*).

Upon motion by the government, on November 9, 1982, the district court entered final judgment in favor of the government and vacated and withdrew that portion of its October, 1982, order which addressed Stanley's *Bivens* claim against the individual defendants. The district court held that if Stanley did not identify and serve at least one individual defendant within ninety days of its order, it would dismiss Stanley's *Bivens* claim against the "unknown" individual defendants.

On February 3, 1983, Stanley filed a second amended complaint naming the appellants as individual defendants. The district court apparently considered Stanley's second amended complaint sufficient to automatically reinstate that portion of its October, 1982, order which it had vacated.

In rejecting the argument that any *Bivens* claim which Stanley might have had against the individual defendants was precluded by *Feres,* the district court cited *Wallace v. Chappell,* 661 F.2d 729 (9th Cir.1981). The United States Supreme Court subsequently granted certiorari in *Chappell* and reversed the judgment of the court of appeals. *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). In light of the Supreme Court's opinion in *Chappell,* on October 28, 1983, the district court rendered an opinion clarifying its disposition of Stanley's *Bivens* claim against the appellants and explaining that *Chappell* did not affect that disposition. *Stanley v. United States,* 574 F.Supp. 474 (S.D.Fla.1983), *modified,* 587 F.Supp. 1071 (S.D.Fla.1984).

The district court analyzed *Chappell* and concluded that *Chappell* did not establish a *per se* rule prohibiting military personnel from maintaining suits against their superiors to recover damages for alleged constitutional violations. Since it found the facts of this case distinguishable from those in *Chappell,* the district court considered whether either of the two exceptions to a *Bivens* action would preclude this action. Finding that neither the "special factors" exception, nor the adequate alternative remedy exception were applicable in this case, the district court concluded that Stanley stated a cause of action against the individual agents and officers of the United States who participated in the LSD experiments.

Pursuant to 28 U.S.C.A. § 1292(b) (West Supp.1985), on January 31, 1984, the district court certified its October 28, 1983, order for interlocutory appeal. By order dated April 13, 1984, we granted the appellants' motion for interlocutory appeal.

## CONTENTIONS OF THE PARTIES

The appellants contend that the district court erred in holding that Stanley's *Bivens* action is not barred by *Chappell.* They argue that *Chappell* enunciated an absolute, *per se* rule that military servicemen may not bring *Bivens* actions against their superiors because such suits would necessitate inquiry into the internal structure of the military and thereby undermine discipline.

Stanley contends that *Chappell* does not state an absolute rule and that the "special factors" present in *Chappell* are not present in this case so as to negate his *Bivens* action.

The appellants also urge us to address Stanley's statutory civil rights claims on the merits, even though the district court failed to address those claims. The appellants argue that the resolution of those issues now will promote both judicial economy and fairness because the same rationale which precludes Stanley's *Bivens* claim also precludes his statutory claims.

Stanley contends that we should not consider his statutory claims because those claims have yet to be addressed by the

district court. Stanley also points out that the statutory claims are beyond the scope of this court's order allowing this interlocutory appeal.

## ISSUES

We must decide whether Stanley's *Bivens* action is precluded by the Supreme Court's recent pronouncements in *Chappell* and whether to dispose of Stanley's statutory civil rights claims on the merits.

## DISCUSSION

### I. *Bivens Claim*

Appellants contend that Stanley's action is barred by the absolute rule enunciated in *Chappell* that military personnel cannot sue their superiors for constitutional torts.

### A. *The Feres Doctrine*

The Supreme Court has articulated several different formulations of the considerations which it deems controlling in *Feres* doctrine analysis. In *Feres* itself the Supreme Court identified four factors from which it concluded that Congress had not intended to subject the government to liability for the serviceman's injuries: (1) the lack of parallel private liability; (2) the fact that because state law governs an action under the FTCA, the serviceman's right to recover would depend upon the geographical location of the serviceman's duty station, a fortuitous circumstance over which the serviceman has no control; (3) the "distinctively federal character" of the relationship between the government and its military personnel; and (4) the absence of any provision under the FTCA for adjustment of a serviceman's recovery under the Act with any recovery which he might receive under military statutory compensation schemes. *Feres*, 340 U.S. at 141–46, 71 S.Ct. at 156–59.

Underlying these considerations was the belief that the relationship between a soldier and his superior officer is so unique and the intramilitary system of justice and administrative regulatory and remedial procedures so extensive that civilian courts should "hesitate long" before intervening to remedy any wrong allegedly done a serviceman. *Chappell*, 462 U.S. at 300, 103 S.Ct. at 2365, 76 L.Ed.2d at 591. As the Supreme Court explained in *United States v. Brown*, 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954):

The peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claim Act were alleged for negligent orders given or negligent acts committed in the course of military duty, led the Court [in *Feres*] to read the Act as excluding claims of that character. [Citation omitted.]

The Supreme Court has continued to recognize the distinctively federal character of the relationship between the government and members of its armed forces, and the existence of a statutory "no-fault" compensation scheme as elements in the *Feres* analysis. *Chappell*, 462 U.S. at 299, 103 S.Ct. at 2364, 76 L.Ed.2d at 590; *Stencel Aero Engineering v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977). In *United States v. Muniz*, 374 U.S. 150, 162, 83 S.Ct. 1850, 1857, 10 L.Ed.2d 805 (1963), however, the Court acknowledged that "[i]n the last analysis, *Feres* seems best explained" by the *Brown* formulation of the doctrine. As demonstrated by the Court's emphasis in *Chappell*, the concern that civilian court inquiry might adversely affect the intramilitary disciplinary structure has emerged as the most compelling rationale for the *Feres* doctrine. *See Chappell*, 462 U.S. at 300, 304, 103 S.Ct. at 2365, 2367, 76 L.Ed.2d at 590–91, 593; *United States v. Johnson*, 749 F.2d 1530, 1535, 1538 (11th Cir.1985).

### B. *The Chappell Extension of Feres*

The Supreme Court held in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), that a federal official's violation of an individual's constitutional rights gives rise to a cause of action for damages, despite the absence of a federal statute specifically authorizing such constitutional tort actions. A *Bivens*

cause of action may be defeated in a particular case, however, where the defendant demonstrates either that there are "special factors counselling hesitation in the absence of affirmative action by Congress," or that Congress has provided an "equally effective" alternative remedy which it explicitly declared to be a substitute for recovery directly under the constitution. *Bivens,* 403 U.S. at 396, 397, 91 S.Ct. at 2004, 2005.

In *Chappell,* the Supreme Court had occasion to consider the "special factors" that bear upon the propriety of a *Bivens* action brought by military personnel against their superior officers. The Court concluded that those "special factors" also formed the basis of the Court's decision in *Feres. Chappell,* 462 U.S. at 298, 103 S.Ct. at 2364, 76 L.Ed.2d at 589–90.

The servicemen in *Chappell* were members of the United States Navy. Their duty station was a combat naval vessel. The servicemen alleged that because of their minority race, their superior officers failed to assign them desirable duties, threatened them, gave them low performance evaluations, and imposed upon them penalties of unusual severity. *Chappell,* 462 U.S. at 297, 103 S.Ct. at 2364, 76 L.Ed.2d at 589. The Court concluded that the "special factors" of "the unique disciplinary structure of the military establishment and Congress's activity in the field" dictated against providing the servicemen a *Bivens* remedy against their superior officer. *Chappell,* 462 U.S. at 304, 103 S.Ct. at 2367, 76 L.Ed.2d at 593.

The military establishment is founded upon a unique "hierarchical structure of discipline and obedience to command." *Chappell,* 462 U.S. at 300, 103 S.Ct. at 2365, 76 L.Ed.2d at 591. The servicemen in *Chappell* were on active duty and subject to direct orders. The Supreme Court concluded that if those servicemen were permitted to expose their superior officers to personal liability, "[t]he special nature of military life, the need for unhesitating and decisive action by military officers and equally disciplined responses by enlisted personnel, would be undermined." *Chap-*

*pell,* 462 U.S. at 304, 103 S.Ct. at 2367, 76 L.Ed.2d at 593.

The Supreme Court's decision to bar the servicemen's claim was also influenced by the fact that the statutory scheme and the comprehensive internal justice system which Congress has devised to regulate military life, adequately provided for the review and remedy of the servicemen's racial discrimination complaints. *Chappell,* 462 U.S. at 302, 103 S.Ct. at 2366, 76 L.Ed.2d at 592.

The Court cautioned that it was not establishing a *per se* rule that military personnel could never seek redress in civilian courts for constitutional violations suffered in the course of military service:

> This Court has never held, nor do we now hold, that military personnel are barred from all redress in civilian courts for constitutional wrongs suffered in the course of military service.

*Chappell,* 462 U.S. at 304, 103 S.Ct. at 2367, 76 L.Ed.2d at 593 (citation omitted).

> Civilian courts must [merely] hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers [because] that relationship is at the heart of the necessarily unique structure of the military establishment.

*Chappell,* 462 U.S. at 300, 103 S.Ct. at 2365, 76 L.Ed.2d at 591.

### C. *Application of Chappell*

The first "special factor" considered by *Chappell* is the "unique disciplinary structure of the military establishment." *Chappell,* 462 U.S. at 304, 103 S.Ct. at 2367, 76 L.Ed.2d at 593. Unlike *Chappell,* this case does not present a situation where "[t]he special nature of military life, the need for unhesitating and decisive action by military officers and equally disciplined responses by enlisted personnel, would be undermined by a judicially created remedy exposing officers to personal liability at the hands of those they are charged to command." *Chappell,* 462 U.S. at 304, 103 S.Ct. at 2367, 76 L.Ed.2d at 593.

Stanley was a volunteer participant in the chemical warfare program. He had been released from his regular duties to participate in this program, administered by both military and civilian personnel. Stanley was not subject to direct military orders, but was free to leave the program at any time.

Most importantly, however, Stanley ingested the LSD when he was instructed to drink a clear substance which, unbeknownst to him, contained the hazardous drug. Because he was surreptitiously administered the drug, Stanley could not possibly have challenged his "orders" to drink the clear substance. "The inescapable demands of military discipline and obedience to orders" are not implicated by the facts of this case. *Chappell,* 462 U.S. at 300, 103 S.Ct. at 2365, 76 L.Ed.2d at 590. There is no concern here that the "peculiar and special relationship of the soldier to his superiors" might be disrupted. *United States v. Brown,* 348 U.S. at 112, 75 S.Ct. at 143.

The other "special factor" which the Court in *Chappell* considered compelling is Congress's plenary authority over the military and its extensive activity in the field. 462 U.S. at 304, 103 S.Ct. at 2367, 76 L.Ed.2d at 593. We conclude that this factor also does not militate against permitting Stanley's *Bivens* claim. Those intramilitary administrative procedures which the Court found adequate to redress the servicemen's racial discrimination complaints in *Chappell* are clearly inadequate to compensate Stanley for the violations complained of here. *Chappell,* 462 U.S. at 303, 103 S.Ct. at 2367, 76 L.Ed.2d at 592–93. The Board for the Correction of Naval Records is not available to Stanley, nor can Stanley avail himself of the remedies provided under article 138 of the Uniform Code of Military Justice, 10 U.S.C.A. § 938 (West 1983). Article 138 is not available to veterans.

Neither of the "special factors" which the Supreme Court deemed dispositive in *Chappell* are present in this case. We hold, therefore, that Stanley's action is not precluded by *Chappell.* Our inquiry is not at an end, however. We must now consider whether Stanley's action is precluded under the adequate alternative remedy *Bivens* exception.[4]

Appellants argue that the Veterans Benefits Act, 38 U.S.C.A. §§ 301–362 (West 1979) (VBA), is a sufficiently adequate alternative remedy to a *Bivens* action to preclude Stanley's claim. *Bivens* requires that the appellants show that Congress explicitly declared the Veterans Benefits Act to be a substitute for recovery directly under the Constitution and that Congress viewed the Act as equally effective as a *Bivens* action. *Bivens,* 403 U.S. at 397, 91 S.Ct. at 2005; *Carlson,* 446 U.S. at 16–19, 100 S.Ct. at 1470–72. As the Supreme Court explained in *Carlson,*

> our inquiry at this step in the analysis is whether Congress has indicated that it intends a statutory remedy to replace, rather than to complement, the *Bivens* remedy. Where Congress decides to enact a statutory remedy which it views as fully adequate only in combination with the *Bivens* remedy, *e.g.,* 28 U.S.C. § 2680(h) [28 U.S.C.S. § 2680(h)], the congressional decision should be given effect by the courts.

*Carlson,* 446 U.S. at 19 n. 5, 100 S.Ct. at 1472 n. 5.

We do not find, nor has any other court which has addressed this issue found, any expression of congressional intent that the VBA constitute a serviceman's exclusive remedy for injuries incurred incident to military service.

Appellants rely upon *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 672–73, 97 S.Ct. 2054, 2058, 52 L.Ed.2d 665 (1977), to support their argument that

---

4. Because the Supreme Court in *Chappell* found that there were "special factors" which precluded the servicemen's action, it did not reach the question of whether the intramilitary remedies which it relied upon as "special factors" were sufficiently adequate alternative remedies to

preclude the action under the second *Bivens* exception. A defendant in a *Bivens* action need merely establish one of the exceptions to defeat the action. *Carlson v. Green,* 446 U.S. 14, 18–19, 100 S.Ct. 1468, 1471–72, 64 L.Ed.2d 15 (1980).

the VBA is an adequate alternative remedy to a serviceman's *Bivens* action. The serviceman in *Stencel* sued the manufacturer of the egress life-support system in his fighter aircraft for the injuries he sustained when the system malfunctioned. The third-party claimant cross-claimed against the United States for indemnity. The Supreme Court considered the same factors which it considers under a claim brought directly by a serviceman to preclude the third-party claimant's indemnity claim. 431 U.S. at 670–74, 97 S.Ct. at 2057–59.

The serviceman in *Stencel* was receiving benefits under the VBA. In rejecting the third-party claimant's argument that the availability of the VBA to the serviceman barred its indemnity action for damages which it might be required to pay the serviceman, the Supreme Court concluded that the VBA serves a dual purpose. It provides a remedy for injured servicemen and it clothes the government in the "protective mantle of the Act's limitation-of-liability provisions." *See Cooper Stevedoring Co. v. Kopke, Inc.,* 417 U.S. 106, 115, 94 S.Ct. 2174, 2179, 40 L.Ed.2d 694 (1974). *Stencel* concluded, without further analysis, that "the military compensation scheme provides an upper limit of liability for the Government as to service-connected injuries. To permit [the third-party claimant's] claim would circumvent this limitation, thereby frustrating one of the essential features of the Veterans Benefits Act." *Stencel,* 431 U.S. at 673, 97 S.Ct. at 2059.

We conclude that *Stencel* is not binding precedent on the issue of whether the VBA is the exclusive remedy for servicemen injured while acting incident to military service. First, that issue was not expressly before the Court in *Stencel.* The third-party claimant in *Stencel* merely argued that "it *may* be fair to prohibit direct recovery by servicemen under the Act, since they are assured of compensation regardless of fault under the Veterans Benefits Act." *Stencel,* 431 U.S. at 672, 97 S.Ct. at 2058 (emphasis added). Moreover, as the dissent in *Stencel* noted, "the Veterans Benefits Act does not even contain an explicit declaration that it is the exclusive remedy

against the Government for a serviceman's injury." *Stencel,* 431 U.S. at 675, 97 S.Ct. at 206. (Marshall, J., dissenting).

■ Most recently in *Lockheed Aircraft Corp. v. United States,* 460 U.S. 190, 202, 103 S.Ct. 1033, 1040, 74 L.Ed.2d 911 (1983), the Supreme Court acknowledged that "[w]e affirmed the dismissal of Stencel's cross-claim even though no limitation of liability statute applied to the case, because we found that the limitation of liability principle of *Feres v. United States,* 340 U.S. 135, 95 L.Ed. 152, 71 S.Ct. 153 (1950), precluded Stencel's indemnity claim." Thus, as *Lockheed* explains, the *Stencel* discussion of the VBA relates only to the VBA as a *Feres* factor or a "special factor" under the first *Bivens* exceptions. The *Stencel* discussion of the VBA is not relevant to an analysis of the VBA as a sufficiently adequate alternative remedy to preclude a *Bivens* claim under the second exception to *Bivens.* We relied upon *Lockheed* in concluding in *Cole v. United States,* 755 F.2d 873, 880 (11th Cir.1985), that "[t]he VBA ... is best regarded as an additional reason for barring a claim [under the FTCA] based on an injury which is already determined to be 'incident to service,' rather than a dispositive factor [barring the FTCA claim]." Similarly, we hold that the VBA is not a sufficiently adequate alternative to a *Bivens* action to bar Stanley's claim.

## II. *FTCA Claim*

In the previous appeal, the former Fifth Circuit held that Stanley's claim against the government under the FTCA was barred under the *Feres* doctrine because "Stanley was engaged in activities incident to his military service at the time his injuries arose." *Stanley I,* 639 F.2d at 1150. *Stanley I* established the "law of the case" on Stanley's pre-discharge claim against the government under the FTCA.

■ Under the "law of the case" doctrine, an appellate court's findings of fact and conclusions of law are *generally* binding in all subsequent proceedings in the same case. *Dorsey v. Continental Casu-*

*alty Co.*, 730 F.2d 675, 678 (11th Cir.1984). In three instances federal courts have the power to reopen issues that have been previously decided on appeal: (1) when the evidence on a subsequent trial was substantially different, (2) when controlling authority has since made a contrary decision of the law applicable to the issue, or (3) when the previous decision was clearly erroneous and would work a manifest injustice. *Westbrook v. Zant*, 743 F.2d 764, 768–69 (11th Cir.1984) (citing *White v. Murtha*, 377 F.2d 428, 432 (5th Cir.1967)).

■ The second exception to the "law of the case" doctrine is applicable in this case. The former Fifth Circuit's conclusion that Stanley's FTCA action against the government was barred under the *Feres* doctrine was premised *solely* upon its finding that Stanley was acting incident to military service at the time of the incident alleged. The former Fifth Circuit did not proceed to the next level of inquiry to determine whether the considerations underlying the *Feres* doctrine militated against permitting Stanley to bring the FTCA claim. The former Fifth Circuit did not, however, have the benefit of *Johnson v. United States*, 749 F.2d 1530 (11th Cir.1985), and *Cole v. United States*, 755 F.2d 873, *reh'g denied*, 765 F.2d 1123 (11th Cir.1985).

The plaintiff in *Johnson* was the personal representative of the estate of a serviceman who was killed when his helicopter crashed into the side of a mountain. The plaintiff's complaint alleged that the negligence of civilian Federal Aviation Administration air traffic controllers was the proximate cause of the serviceman's death.

Despite the fact that *Johnson* presented an atypical *Feres* situation in that the alleged tort-feasors were civilians, we proceeded to examine the policy which pervades each of the *Feres* considerations. Our examination was to determine whether the *Feres* doctrine should be extended to preclude an action where the alleged tort-feasor is *not* a member of the armed forces or a civilian employee engaged in activities usually associated with the armed forces. *Johnson*, 749 F.2d at 1538–39 n. 6, 1540–42

(citing *Hunt v. United States*, 636 F.2d 580, 599 n. 51, 597 (D.C.Cir.1980)).

In *Cole v. United States*, 755 F.2d at 877 n. 11, we interpreted *Johnson* as requiring the case-by-case analysis where the facts presented are "sufficiently different from the usual *Feres*-type case." *Cole* presented the novel issue of the government's liability for a serviceman's death where the incident which gave rise to the serviceman's death occurred while the serviceman was engaged in activity incident to his military service, but the government's alleged duty to warn arose *after* the serviceman's discharge. In *Cole* it was after the discharge that the government's knowledge concerning the hazards to which the serviceman had been exposed substantially increased. We concluded that the facts in *Cole* were so novel that it was both *"necessary* and instructive" to evaluate each of the considerations underlying the *Feres* doctrine in order to properly address the plaintiffs' claim. *Cole* at 877.

Subsequent to our decision in *Cole*, we granted the government's suggestion that *Johnson* be reviewed by the en banc court. *Johnson v. United States*, 760 F.2d 244 (11th Cir.1985). Relying on *United States v. Shearer*, —— U.S. ——, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), also decided after *Cole*, we upheld the panel's decision and reinstated its opinion. *Johnson v. United States*, 779 F.2d 1492, 1493 (11th Cir.1985) (en banc).

*Shearer* involved the kidnap and murder of one serviceman by another while both were off duty and away from their bases. The decedent's mother brought an action under the FTCA alleging that the Army knew that the murderer was dangerous and negligently failed to control or warn others about him.

Although the Court held the claims barred because they "struck at the core" of the concerns underlying *Feres*, the Chief Justice stated that:

[t]he *Feres* doctrine cannot be reduced to a few bright-line rules; each case must be examined in light of the statute as it

has been construed in *Feres* and subsequent cases.

*Shearer* —— U.S. at ——, 105 S.Ct. at 3043, 87 L.Ed.2d at 44.

We hold that under *Johnson, Cole,* and *Shearer,* this case requires the case-by-case analysis to determine whether the purpose of the *Feres* doctrine would be served by precluding Stanley's FTCA claim against the government.

 Since the former Fifth Circuit's ruling in *Stanley I,* controlling authority in the Eleventh Circuit has made a contrary decision of the law applicable to the Stanley facts. Today, in the Eleventh Circuit, controlling precedent does not automatically or mechanically preclude Stanley's lawsuit under the FTCA or *Bivens* upon a finding that he suffered the complained of injury while performing duties incident to military activities. The interpretation of the *Feres* doctrine in the Eleventh Circuit is far different from the interpretation of the *Feres* doctrine in the former Fifth Circuit. As the *Feres* doctrine is presently applied in the Eleventh Circuit, Stanley may have a cause of action for injuries inflicted before his discharge. Likewise, even as *Stanley I* held, recent precedent in this circuit, *Johnson* and *Cole,* provide Stanley with the possibility of a cause of action under both the FTCA and *Bivens* for events occurring after his discharge. Consistent with the recent analysis of the *Feres* considerations in this circuit, we hold that neither Stanley's cause of action against the government under the FTCA nor his action against the federal officials and civilians under *Bivens* is necessarily barred by the *Feres* doctrine.

On remand, the district court should allow Stanley the opportunity to amend to plead consistent with recent precedent.

III. *Statutory Civil Rights Claims*

 The appellants urge us to consider Stanley's statutory civil rights claims on the merits, even though those claims have not yet been addressed by the district court. We decline to do so. Not only have those claims not been addressed by the district court, but they are also beyond the scope of the issue for which we certified this interlocutory appeal.

### CONCLUSION

We affirm the district court's judgment that Stanley's complaint states a cause of action against the appellants under *Bivens* and reverse the judgment that Stanley's FTCA action against the government is barred by *Feres.*

AFFIRMED in part, REVERSED in part.