Joyce ATKINSON, Plaintiff/Appellant,

v.

UNITED STATES of America,
Defendant/Appellee.

No. 85–2200.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 13, 1986.

Decided Nov. 14, 1986.

Allan S. Haley, Nevada City, Cal., for plaintiff/appellant.

Mark J. Bennett, Asst. U.S. Atty., Honolulu, Hawaii, for defendant/appellee.

Before NELSON, CANBY and NOONAN, Circuit Judges.

NELSON, Circuit Judge:

Plaintiff-appellant Joyce Atkinson appeals from the district court's grant of summary judgment to the defendant-appellee United States. Atkinson argues that the court erred in finding the United States immune from liability under the Federal Tort Claims Act for malpractice incident to pre-natal care she received from military personnel. We have jurisdiction under 28 U.S.C. § 1291 (1982), and we reverse.

## FACTUAL AND PROCEDURAL HISTORY

In March 1982, Joyce Atkinson was serving as a Specialist (4th Class) with the United States Army in Hawaii. On March

26, during the second trimester of her pregnancy, she reported to Tripler Army Medical Center ("Tripler"), complaining of blurred vision, hypertension and edema. The staff at Tripler did not treat her, and told her to go home. Three days later, Atkinson returned to Tripler, complaining of dizziness, nausea and hypertension. Again, the Tripler staff merely told her to go home. Two weeks later, Atkinson returned to Tripler complaining of severe abdominal pain and hypertension. Finally, she was hospitalized for pre-eclampsia, a condition occurring in pregnancy which is life-threatening to both mother and fetus because of associated kidney failure, high blood pressure, stroke and premature birth. She claims that as a result of this negligent medical treatment, she delivered a stillborn child and suffered physical and emotional injuries of her own.

■ Atkinson filed a malpractice suit against the government under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674 (1982), alleging that she "suffered great pain of body and mind and sustained serious and permanent bodily injuries as a result of the negligence of defendant's agents, employees and/or representatives in failing to properly diagnose her condition and hospitalize, treat, monitor and care for her." The United States filed a motion to dismiss for failure to state a claim upon which relief may be granted, for judgment on the pleadings, and for summary judgment. The district court, finding that Atkinson was injured in the course of activity incident to service, held that the United States was immune from malpractice liability. Thus, the district judge granted the motion for summary judgment in a judgment filed April 23, 1985, from which Atkinson filed this timely appeal.[1]

## STANDARD OF REVIEW

Determination of the district court's subject matter jurisdiction is a question of law reviewable *de novo* on appeal. *Redding Ford v. California State Board of Equalization*, 722 F.2d 496, 497 (9th Cir.1983), 469 U.S. 817, *cert. denied*, 105 S.Ct. 84, 83 L.Ed.2d 31 (1984).

## DISCUSSION

The FTCA, passed by Congress in 1946, represents the culmination of a long effort to mitigate the unjust consequences of the common law sovereign immunity doctrine which protected the United States from tort liability. *Feres v. United States*, 340 U.S. 135, 139, 71 S.Ct. 153, 156, 95 L.Ed. 152 (1950). Reacting against the notion that the sovereign could do no wrong, Congress provided in the FTCA that the United States is liable in tort "in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674 (1982). Congress did not exclude military personnel from FTCA coverage. The statute "provide[s] for District Court jurisdiction over *any* claim founded on negligence brought against the United States.... '[A]ny claim' [does not] mean[ ] 'any claim but that of servicemen.'" *Brooks v. United States*, 337 U.S. 49, 51, 69 S.Ct. 918, 919, 93 L.Ed. 1200 (1949) (emphasis in original).

Despite this "sweeping" legislatively-established waiver of immunity, *United States v. Yellow Cab Co.*, 340 U.S. 543, 547, 71 S.Ct. 399, 402, 95 L.Ed. 523 (1951), in *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950), the Supreme Court created a judicial exception to Congress's general rule of governmental liability. As originally formulated, this exception, informally known as the *Feres* doctrine, immunized the Government from liability under the FTCA "for injuries

---

**1.** The district judge's order was incorrect procedurally. When a court determines that the United States is immune from liability under the FTCA, the proper disposition is a dismissal for lack of subject matter jurisdiction, not a grant of summary judgment. *Broudy v. United States*, 661 F.2d 125, 128 n. 5 (9th Cir.1981). In light of our holding, however, this error is of no consequence. Since properly viewed, this case involves an appeal from an order dismissing the action for want of jurisdiction, we accept as true, for purposes of appeal, the factual allegations contained in Atkinson's complaint. *Id.* at 126 n. 1.

to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. at 159. The three concerns later identified as the foundation for this doctrine were: (1) the distinctively federal nature of the relationship between the Government and members of its armed forces; (2) the availability of alternative compensation systems; and (3) the fear of damaging the military disciplinary structure. *See Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 671–72, 97 S.Ct. 2054, 2057–58, 52 L.Ed.2d 665 (1977).

■ It now is clear, however, that the third concern of the three listed above is determinative:

"[T]he protection of military discipline ... serves largely if not exclusively as the predicate for the *Feres* doctrine. Although the [Supreme] Court has woven a tangled web in its discussion of the 'distinctly federal' notion and of the alternative compensation system, it has not wavered on the importance of maintaining discipline within the armed forces. The Court has found it unseemly to have military personnel, injured incident to their service, asserting claims that question the propriety of decisions or conduct by fellow members of the military. Only this factor can truly explain the *Feres* doctrine and the crucial line it draws...."

*Monaco v. United States,* 661 F.2d 129, 132 (9th Cir.1981) (quoting *Hunt v. United States,* 636 F.2d 580, 599 (D.C.Cir.1980)), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982). *See also Johnson v. United States,* 704 F.2d 1431, 1436 (9th Cir.1983) (safeguarding military discipline is fundamental rationale for immunity). Indeed, in its latest word on the *Feres* doctrine, the Supreme Court confirmed that the overriding concerns of the doctrine are with the effect of a tort suit in the second-guessing of military decisions or in the impairment of military discipline. *Shearer v. United States,* 473 U.S. 52, ——, 105 S.Ct. 3039, 3043, 87 L.Ed.2d 38 (1985). The Court specifically stated that

the other factors enumerated in *Feres* no longer are controlling. *Id.* at 105 S.Ct. at 3043 n. 4. Thus, the *Feres* doctrine bars suit only where a civilian court would be called upon to second-guess military decisions or where the plaintiff's admitted activities are of the sort that would directly implicate the need to safeguard military discipline. *See Johnson,* 704 F.2d at 1436.

In *Shearer,* the Supreme Court also confirmed that courts should take a case-by-case, rather than *per se,* approach to claims of immunity. "The *Feres* doctrine cannot be reduced to a few bright-line rules; each case must be examined in light of the statute as it has been construed in *Feres* and subsequent cases." 105 S.Ct. at 3043. Because *Shearer* makes clear that the paramount concern is with military decisions or discipline, in each case, we must determine the effect of a particular suit on military decisions or discipline. *See Johnson,* 704 F.2d at 1436 (in each case we must determine whether interests protected by *Feres* doctrine are implicated). "[W]here there is no relevant relationship between the service member's behavior and the military interests that might be jeopardized by civil suits, the *Feres* doctrine cannot bar recovery." *Id.* at 1440. *See also Stanley v. United States,* 786 F.2d 1490, 1499 (11th Cir.1986) (*Shearer* requires case-by-case analysis of whether barring claim serves purposes of *Feres* doctrine); *Bozeman v. United States,* 780 F.2d 198, 201 (2d Cir. 1985) (*Shearer* rejects bright-line tests and requires that each case be analyzed for applicability of *Feres* doctrine).

In light of the Supreme Court's unequivocal instruction to look at each case independently, we reject prior decisions to the extent they establish a *per se* rule prohibiting the medical malpractice claims of military personnel. In *Henninger v. United States,* 473 F.2d 814, 815 (9th Cir.), *cert. denied,* 414 U.S. 819, 94 S.Ct. 43, 38 L.Ed.2d 51 (1973), we held that *Feres* barred a military plaintiff's malpractice claim, which was based upon the negligent performance of an elective procedure, because it would be too difficult to determine

"the effect that a particular type of suit would have upon military discipline...." We reasoned that "[t]his is a classic situation where the drawing of a clear line is more important than being able to justify in every conceivable case, the exact point at which it is drawn." *Id.* at 816. Similarly, in *Veillette v. United States*, 615 F.2d 505, 507 (9th Cir.1980), we refused to determine the effect of a particular malpractice suit on military discipline and morale, relying instead on the conclusory statement that "allegations of medical malpractice ... have consistently been held to fall within the bounds of the [*Feres*] doctrine when the plaintiff was a serviceman on active duty at the time of the alleged malpractice." In light of *Shearer*'s command to the contrary, the *per se* approach exhibited in *Henninger* and *Veilette* is improper. Thus, we are not bound by those cases, or any others applying a *per se* rule, to hold that *Feres* bars Atkinson's suit for negligent care received incident to her pregnancy.

[3] Given *Shearer*'s command that in each case we determine the effect of a suit on military decisions or discipline, we cannot rely on any particular factor or factors as a "substitute for analysis" of whether the suit would threaten military discipline.[2] *See Troglia v. United States*, 602 F.2d 1334, 1338 (9th Cir.1979). Thus, that Atkinson would not have been entitled to care but for her military status is not sufficient to bar her suit. To hold otherwise "would overlook the foundation of *Feres*, that the Government's liability turns not on the reasons for the treatment from which the claim arises, but on the effect of a suit for damages on the military system." *Bankston v. United States*, 480 F.2d 495, 497–98 (5th Cir.1973). *See also Parker v. United States*, 611 F.2d 1007, 1011 (5th Cir.1980)

("The test is not a purely causal one: one cannot merely state that but for the individual's military service, the injury would not occur."). Nor is it dispositive that the government's alleged negligence took place on-base; even where the negligence takes place on-base, we must "explore the nature of the 'function the soldier was performing at the time of the injury in order to ascertain the totality of the circumstances.'" *Johnson*, 704 F.2d at 1437 (quoting *Parker*, 611 F.2d at 1014). Similarly, that Atkinson was on active duty status when negligently treated is significant only if she was "engaging in an activity that [was] related in some relevant way to [her] military duties." *Johnson*, 704 F.2d at 1438. Thus, while these factors may aid our inquiry, they are by no means dispositive. *Id.* at 1436 (cannot blindly apply rigid rules). Instead, we must ask whether "[t]he facts of this case, viewed in light of the *Feres* doctrine's underlying disciplinary rationale, lead us to conclude that the FTCA does permit [Atkinson's] cause of action." *Id.*

Making this inquiry, we find that the *Feres* doctrine does not bar Atkinson's claim. We first note that pregnant servicewomen did not serve on active duty in 1950 when *Feres* was decided. Thus, the Supreme Court, in barring the two malpractice claims involved in *Feres*, could not have had in mind the unique facts involved in Atkinson's claim. Confronting this novel situation, we fail to see how Atkinson's suit for negligent care administered in a non-field military hospital incident to her pregnancy can possibly undermine "the need for unhesitating and decisive action by military officers and equally disciplined responses by enlisted personnel...." *Chappell v. Wallace*, 462 U.S. 296, 304, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983). At

---

2. We have noted previously the anomalous results obtained through reliance on these factors. *See Troglia v. United States*, 602 F.2d 1334, 1337–38 (9th Cir.1979). For example, military personnel may sue in tort where military aircraft fall on their houses located off-base. *Sapp v. United States*, 153 F.Supp. 496 (W.D.La.1957). Military personnel may not sue, however, where the aircraft fall on homes located on-base. *Pre-*

*ferred Insurance Co. v. United States*, 222 F.2d 942 (9th Cir.), *cert. denied*, 350 U.S. 837, 76 S.Ct. 94, 100 L.Ed. 747 (1955). *See also Veillette v. United States*, 615 F.2d 505, 507 (9th Cir.1980) (that civilians, as well as military personnel, are admitted to military hospital draws attention to "the anomalies created by the court-made exception to the Tort Claims Act)."

the time Atkinson sought treatment, she was "not subject in any real way to the compulsion of military orders or performing any sort of military mission." *Johnson,* 704 F.2d at 1439. No command relationship exists between Atkinson and her attending physician. No military considerations govern the treatment in a non-field hospital of a woman who seeks to have a healthy baby. No military discipline applies to the care a conscientious physician will provide in this situation. Thus, in seeking treatment for complications of her pregnancy, Atkinson "was subject to military discipline only in the very remotest sense." *Id.* at 1440. *Cf. United States v. Lee,* 400 F.2d 558, 564 (9th Cir.1968) ("The necessity of maintaining discipline while a soldier is ... on an operating table is far less clear than the necessity for maintaining discipline among soldiers being transported for military service in military aircraft under control of military authorities."), *cert. denied,* 393 U.S. 1053, 89 S.Ct. 691, 21 L.Ed.2d 695 (1969).

Moreover, the circumstances of this case simply "do not involve the sort of close military judgment calls that the *Feres* doctrine was designed to insulate from judicial review." *Johnson,* 704 F.2d at 1440. We are not dealing with a case "where the government's negligence occurred because of a decision requiring military expertise or judgment." *Id.* Thus, a court hearing Atkinson's claim will not have to inquire into "complex, subtle, and professional decisions as to composition, training, equipping and control of a military force." *Gilligan v. Morgan,* 413 U.S. 1, 10, 93 S.Ct. 2440, 2446, 37 L.Ed.2d 407 (1973). The care provided a pregnant woman hardly can be considered to be distinctively military in character. In short, Atkinson's injuries have nothing to do with her army career "except in the sense that all human events depend upon what has already transpired." *Brooks,* 337 U.S. at 52, 69 S.Ct. at 920. There is simply no connection between Atkinson's medical treatment and the decisional or disciplinary interest protected by the *Feres* doctrine.

Because Atkinson's claim is not the type that "would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness," *Shearer,* 105 S.Ct. at 3044, we hold that the district court had subject matter jurisdiction.

REVERSED.