**Timothy Patrick JONES, deceased, Cheryl Jones, Plaintiffs,**

**v.**

**LA RIVIERA CLUB, INC., "XYZ" Insurance Company, Thomas Dieppa Beauchamp; Anthony Tursi, Personally and as Owner, Manager and Operator of La Riviera Club and Marton, Inc., Intended to be the Legal Designation for La Riviera Club, Defendants and Third Party Plaintiffs,**

**v.**

**UNITED STATES of America, Third Party Defendants.**

Civ. No. 82–2303(RLA).

United States District Court, D. Puerto Rico.

March 4, 1987.

Harry A. Ezratty, San Juan, P.R., for plaintiffs.

Irwin Zemen, Santurce, P.R., for defendants and third party plaintiffs.

## OPINION AND ORDER

ACOSTA, District Judge.

The case at bar is a wrongful death action. Plaintiff-deceased Timothy Patrick Jones and his widow, Cheryl Jones, sued the above-named main defendants for intentional tort and negligence, pursuant to our diversity jurisdiction. The United States, in turn, is being sued for medical malpractice pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, et seq.[1]

Pending before the Court is the United States' motion for summary judgment[2]. Plaintiff[3] and third-party plaintiffs filed their respective oppositions[4], to which the United States replied[5].

1. Codefendants Anthony Tursi and Marton, Inc. moved to implead the United States on December 19, 1983 (docket No. 28). The motion was granted. They then filed a third-party complaint against the United States on January 4, 1984 (docket No. 29). Thereafter, plaintiff filed a medical malpractice claim against the United States pursuant to the FTCA (filed February 6, 1984, docket No. 33).

2. Filed April 19, 1984 (docket No. 38).

3. Since the death of one of the two plaintiffs is the subject matter of this suit, we will simplify the text of this Opinion and Order by referring only to surviving plaintiff Cheryl Jones.

4. Third-party plaintiffs' motion was filed on May 8, 1984 (docket No. 40) and plaintiff's motion was filed on May 30, 1984 (docket No. 42).

5. Filed May 17, 1984 (docket No. 41). The government followed up its reply with an additional supportive motion, filed June 20, 1984 (docket No. 43), which was rebutted by plaintiff

## BACKGROUND OF FACTS

On the night of May 14, 1982, Mr. Jones, a member of the United States Navy, and some shipmates visited the La Riviera Night Club while on liberty from their duty vessel, the S.S. Guadalcanal.

At the La Riviera, Mr. Jones was attacked, severely beaten, and thrown down a flight of stairs by codefendant Beauchamp, an employee of codefendant Tursi, the owner of the night club. Unconscious, Mr. Jones was carried back to his vessel by his shipmates where he was either left unattended or received little medical attention for twenty-four hours. At that point, and while still unconscious, Mr. Jones was transferred to the Veteran's Administration Hospital in San Juan. On May 21, 1984, a week after the incident at the night club, Timothy Jones died.

## ARGUMENTS

Movant, the United States, argues that this Court lacks subject matter jurisdiction to adjudicate the instant FTCA claims against the United States. It alleges immunity from this kind of suit pursuant to the historically controversial[6] Feres doctrine. Feres v. U.S., 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

on August 29, 1984 (docket No. 44). Finally, plaintiff supplemented her motion in opposition to summary judgment with a motion filed on January 30, 1987 (docket No. 46).

6. The Feres doctrine has been described as a "blunt instrument". Bozeman v. United States, 780 F.2d 198, 200 (2nd Cir.1985). See also Johnson v. United States, 749 F.2d 1530 (11th Cir.1985) (panel opinion noting the "widespread, almost universal criticism of Feres") aff'd on rehearing en banc, 779 F.2d 1492 (11th Cir.1986); Kohn v. United States, 680 F.2d 922, 925 (2nd Cir.1982) ("although Feres remains a controversial decision, we are bound by the Supreme Court's continual adherence to it."); LaBash v. United States Department of the Army, 668 F.2d 1153, 1156 (10th Cir.1982) ("although many courts have expressed reservations about the continuing validity of the broad Feres doctrine, only the United States Supreme Court can overrule or modify Feres."); Note, from Feres to Stencel: should military personnel have access to FTCA recovery? 77 Mich.L.Rev. 1099 (1979).

Briefly, the *Feres* doctrine is a judicially created exception to the broad congressional waiver of sovereign immunity contained in the FTCA. (The FTCA provides that the United States is liable in tort "in the same manner and to the same extent as a private individual under like circumstances ..." 28 U.S.C. § 2674 (1982)). *Feres* precludes members of the armed forces from maintaining an FTCA action where the "claimant, while on active duty and not on furlough, sustained injury due to the negligence of others in the armed forces." 340 U.S. at 138, 71 S.Ct. at 155. The injury must arise out of or be sustained in the course of activity "incident to [military] service." *Id.* at 146, 71 S.Ct. at 159.

There is considerable precedence regarding the "incident to service" test which has been applied to bar wrongful death actions based on medical malpractice by the federal government. *See, e.g., Rayner v. U.S.,* 760 F.2d 1217, 1219 (11th Cir.), *reh. denied,* 767 F.2d 938; *cert. denied,* — U.S. —, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985) (Medical malpractice action brought by widow and children of serviceman under FTCA barred by *Feres* ); *Lampitt v. United States,* 753 F.2d 702 (8th Cir.1985) (Serviceman claiming lack of active duty status and of informed consent sued government for medical malpractice; held barred by *Feres* ); *Hamilton v. United States,* 564 F.Supp. 1146, *aff'd,* 719 F.2d 1 (1st Cir. 1983) (*Feres,* bars wrongful death/medical malpractice action brought by serviceman's widow under FTCA); *But Cf. Atkinson v. United States,* 804 F.2d 561 (9th Cir.1986) (FTCA claim of negligent prenatal medical treatment received at military hospital while servicewoman was on active duty status not barred by *Feres* ). In fact, the two companion cases to *Feres, Griggs v. U.S.,* and *Jefferson v. U.S.,* were medical

malpractice cases and no recovery was allowed.

■ Based on the case law movant argues that Mr. Jones' alleged medical malpractice injuries at the hands of the government were incident to his active military service and thus his claim under the FTCA is barred by the *Feres* doctrine; therefore, this Court lacks subject matter jurisdiction and summary judgment should be entered in the government's favor. We agree, especially given the weight and clear import of recent case law on this issue. However, a grant of summary judgment would be procedurally improper[7]. We instead view the government's motion as one for lack of subject matter jurisdiction under Fed.R. Civ.P. 12(b)(1) or 12(h)(3) which we grant for the reasons stated below. Thus we will dismiss the complaints against the United States for want of jurisdiction.

Since we are viewing this matter as a motion to dismiss, we must accept as true plaintiff's allegations and give her all reasonable and favorable inferences that can be deduced from the allegations. *Williams v. City of Boston,* 784 F.2d 430, 433 (1st Cir.1986).

In her opposition to the United States' motion to dismiss plaintiff makes a three-pronged attack against the government's claim of *Feres*-type immunity. First, she argues that Mr. Jones was "on leave" and not on active duty when he was injured at the night club; and that his "non-active duty status" was preserved even after he was taken back to the S.S. Guadalcanal because he arrived there unconscious. Second, plaintiff argues that also because Mr. Jones was unconscious he could not make his rightful and probable choice of attending a private rather than a military hospital. This we interpret as a lack of in-

---

7. The issue here is whether or not the United States is immune under the *Feres* exception to the FTCA. If the United States has not consented to be sued, then we have no jurisdiction to adjudicate the merits of the case. A grant of summary judgment would be a determination on the merits and would therefore be an erroneous disposition of the instant cause. *Stanley v. CIA,* 639 F.2d 1146, 1159 (5th Cir.1981); *Atkinson,* 804 F.2d at 562, n. 1; *Broudy v. United*

*States,* 661 F.2d 125, 128 n. 5; *Lampitt v. U.S.,* 585 F.Supp. 151 (E.D.Mo.1984). Moreover, insofar as movant has submitted just one matter outside the pleadings, i.e., an affidavit, to support its motion for summary judgment—we read the affidavit as nothing more than evidence on a motion (to dismiss) pursuant to Fed.R.Civ.P. 43(e). *Lefkowitz v. Lider,* 443 F.Supp. 352, 354 (D.Mass.1978).

formed consent claim. Third, and last, plaintiff claims that the situs of the injuries, being private and not federal, is controlling; and that Mr. Jones' death though a result of the government's negligence, was not sufficiently "service-connected" to meet the *Feres* test. In sum, plaintiff argues that Mr. Jones was on leave and thus not on active duty; that he did not give his informed consent to attend the V.A. Hospital; that the situs of the injuries was on private and not federal land; and that the injuries were not incident to service.

■ We can quickly dispose of plaintiff's "on leave," "informed consent" and "situs" arguments in order to focus on her remaining arguments which truly form the crux of this case. First, to be on leave or on liberty is not the same as being on furlough for purposes of the *Feres* doctrine. It seems ludicrous to argue that because a seaman is given a night pass to entertain himself, that he no longer responds to the commands of his superior officers nor is bound by Navy regulations and discipline as to, e.g., what places are "off limits", or when and where to report back. The Second Circuit has convincingly disposed of this issue in *Bozeman, supra* (*Feres* bars FTCA claim that Army negligently served drinks to drunk officers at an officers' club).

In *Kohn v. United States*, 680 F.2d 922 (2nd Cir.1982), we noted that "military personnel 'continued in active duty status even when they are on liberty or on leave'." *Id.* at 925 (quoting *Camassar v. United States*, 531 F.2d 1149, 1151 n. 2 (2nd Cir.1976) (per curiam)). Under that test, John Bozeman was on "active duty" at the time of his injury and was therefore subject to the *Feres* doctrine because he was not on furlough. *See Feres*, 340 U.S. at 146, 71 S.Ct. at 159. 780 F.2d at 200.

■ Second, plaintiff's "informed consent" argument is equally unavailing and has also been persuasively treated by other courts. *See Lampitt, supra* at 703 (serviceman alleging negligent surgery and lack of informed consent denied recovery

under FTCA); *see also Rayner, supra* at 1219.

■ Lastly, we find plaintiff's situs argument misplaced. The complaints against the United States deal only indirectly with Mr. Jones' injuries at the night club. It is his further injury as it were, i.e., the medical malpractice, that allegedly makes the United States liable. That malpractice occurred on federal military facilities. In any case, as will be elucidated more fully below, the situs of the injury is no longer a controlling factor in the *Feres* analysis.

Plaintiff's last argument, that Mr. Jones' injuries were not "incident to service", deserves more extended analysis. Plaintiff is simply saying that because the negligent conduct involved non-combat related medical treatment it cannot be considered service-connected. As we stated above, many courts have held otherwise. However, the Supreme Court has recently admonished in *Shearer, infra*, that on this particular issue we cannot rely on the *stare decisis* doctrine and instead we must consider whether or not the facts, inferences and arguments presented by plaintiff fit the *Feres* paradigm and the Supreme Court's rationale for the doctrine. We thus proceed to examine the circumstances of this case in light of the traditional application of the *Feres* exception. *Shearer v. United States*, 473 U.S. 52, 105 S.Ct. 3039, 3043, 87 L.Ed.2d 38 (1985) ("the *Feres* doctrine cannot be reduced to a few bright-line rules; each case must be examined in light of the statute as it has been construed in *Feres* and subsequent cases.").

*Shearer* is the Supreme Court's latest word on the *Feres* doctrine. The Court there dismissed a claim by the executors of a serviceman's estate that the military had negligently failed to prevent an assault and battery on their decedent. In *Shearer*, the injury to decedent had occurred off base and was committed by an off-duty marine. In applying the *Feres* doctrine to the *Shearer* facts, the Court explicitly rejected several of its original *Feres* rationales and held that neither the situs of the injury nor the active duty status (although we must continue to assume that a serviceman on

furlough and not just "off duty" could still overcome the *Feres* doctrine and sue the United States under the FTCA, *see* 340 U.S., at 138, 71 S.Ct. at 155), were controlling factors. Therefore, the key factor and the chief rationale of *Feres* today is the Supreme Court's mandate that civilian courts must not "second-guess military decisions." *Id.* 473 U.S. at 57, 105 S.Ct. at 3043. Courts must therefore exercise restraint wherever a suit is bound to impair, in any relevant way, military discipline. "[W]here there is no relevant relationship, [however,] between the service member's behavior and the military interests that might be jeopardized by civil suits, the *Feres* doctrine cannot bar recovery." *Johnson v. U.S.,* 704 F.2d 1431, 1440 (9th Cir.1983). Therefore, in this case, we must test whether the instant claim would require Navy officers and other military personnel " 'to testify in court as to each other's decisions and actions' ". *Shearer,* 473 U.S. at 58, 105 S.Ct. at 3043 (quoting *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 673, 97 S.Ct. 2054, 2058, 52 L.Ed.2d 665 (1977)). And whether such testimony would implicate "the wisdom of a wide range of military and disciplinary decisions ..." *Shearer,* 473 U.S. at 58, 105 S.Ct. at 3044; *see also Chappel v. Wallace,* 462 U.S. 296, 300, 103 S.Ct. 2362, 2365, 76 L.Ed.2d 586 (1983).

If we were to try the case before us, we would certainly be called upon to second-guess decisions made by military personnel. The evidence needed to establish that the Navy owed Mr. Jones a duty of care would require Navy officers to testify about their policies in staffing and running medical facilities and in treating seamen. Once a duty of care were established, the training of both Navy and general military medical personnel would be at issue. Questions would abound as to whether or not standard procedure was followed in transferring Mr. Jones to the V.A. Hospital, and once there, whether the appropriate regulations were enforced. Even the question of "whether and how to place restraints on a soldier's off-base conduct", *Shearer,* 473 U.S. at 58, 105 S.Ct. at 3044, might arise given the fact that Mr. Jones was visiting a well known night club that was not clearly designated off limits to military personnel even though it was, in fact, off limits.

■ To adjudicate this suit as it relates to the United States would thus implicate the Court in conflicts involving the military structure or military decisions. To summarize: there are significant military considerations involved in how and where the military permits its members to go on leave, and what it requires of and does to them once they return to base. Primary military concerns are also involved in how the Navy decides to medically treat a navyman exhibiting the type of injuries at issue here, to wit, fractured cervical vertebrae and "brain injuries". We note that knowledge of the proper treatment for these types of injuries should be very common to a government force trained for combat and other activities that often result in the sort of fractures, lacerations and concussions complained of here. The nature of Mr. Jones' injuries and his relationship with the military doctors also serve to distinguish the noble holding in *Atkinson, supra,* on which plaintiff places great, albeit not well articulated, weight.

In *Atkinson,* the Ninth Circuit held that *Feres* did not bar an FTCA claim against the United States brought by a pregnant servicewoman who lost her baby because of negligent prenatal care. The Court there sought to distinguish *Shearer* by emphasizing the *sui generis* nature, vis-á-vis the *Feres* history, of pregnant women serving on active military duty. Although we do not entirely agree with the Ninth Circuit's reading of *Shearer,* we need not discuss our disagreement since *Atkinson* is factually quite different from the instant case. Here, we are dealing with the beating of a serviceman who allegedly receives negligent emergency medical treatment for his injuries and dies, whereas *Atkinson* dealt with the strictly medical relationship between a pregnant servicewoman and her military doctor where the doctor, over an extended period, negligently kills a third party, the fetus, and thereby injures the servicewoman.

In *Atkinson,* the Ninth Circuit held that military discipline was not clearly implicated because there are arguably few military considerations surrounding the provision of adequate prenatal care for pregnant servicewomen. Prenatal care is a novel situation for the military which involves a very small population. Testimony by military officers would be minimal and would thus not "implicate the wisdom of a wide range of military and disciplinary decisions".

Mr. Jones' situation, on the other hand, is not so novel or particularized as Ms. Atkinson's. Should Mr. Jones' suit go forward, various military officers would have to testify as to the adequacy of their supervision of seamen who return from liberty, many of whom probably return in varying degrees of consciousness; of their emergency medical treatment policies; of the adequacy or inadequacy of ship and shore facilities and the interrelation, communication, and coordination between them; and so forth.

In conclusion, there is a relevant relationship between what happened to Mr. Jones and the military interests that might be jeopardized by this civil suit. A relationship which must remain strictly military and thus calls for our restraint.

Although we are moved by the plight of plaintiff and we join in the widespread criticism of the harsh *Feres* doctrine [8], we nonetheless must accept the dictates of our Supreme Court, whose mandate and analysis in *Shearer* forcefully apply to the circumstances of this case.

We take small satisfaction, as did the Court in *Bozeman, supra,* in noting that plaintiff is currently receiving serviceman's survivor benefits from the government. Although the "alternative compensation" discussed in *Feres* is "no longer controlling", *United States v. Shearer,* 473 U.S. at 58 n. 4, 105 S.Ct. at 3043 n. 4, "it makes the outcome in this case more palatable." 780 F.2d at 201.

**8.** *See, supra* note 9.

**9.** Since Cheryl Jones' claim is derived from her husband's it is therefore also barred. The same holds for third-party plaintiffs. *See Stencel Aero*

For the reasons stated above, we hereby dismiss, for lack of subject matter jurisdiction, plaintiff-deceased Timothy Jones and plaintiff Cheryl Jones' claim (docket No. 33) as well as the third-party complaint (docket No. 29) against the United States [9]. Partial judgment shall be entered accordingly.

IT IS SO ORDERED.

*Engineering Corp. v. United States,* 431 U.S. 666 (1977); *DeFont v. United States,* 453 F.2d 1239, 1249 (1st Cir.1972) (per curiam).