**Joyce ATKINSON, Plaintiff/Appellant,**

v.

**UNITED STATES of America, Defendant/Appellee.**

**No. 85–2200.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 13, 1986.

Decided Aug. 13, 1987.

Allan S. Haley, Nevada City, Cal., for plaintiff-appellant.

Mark J. Bennett, Honolulu, Hawaii, for defendant-appellee.

Before NELSON, CANBY and NOONAN, Circuit Judges.

NELSON, Circuit Judge:

The petition for rehearing is granted. In light of *United States v. Johnson,* —— U.S. ——, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987), the opinion published at 804 F.2d 561 (9th Cir.1986), *modified,* 813 F.2d 1006 (9th Cir. 1987), is withdrawn and the following opinion is issued. The suggestion for rehearing en banc is moot.

Plaintiff-appellant Joyce Atkinson appeals from the district court's grant of summary judgment in favor of the defendant-appellee United States. Atkinson argues that the court erred in finding the United States immune from liability under the Federal Tort Claims Act for malpractice incident to pre-natal care she received from military personnel. We have jurisdic-

tion under 28 U.S.C. § 1291 (1982). We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

In March 1982, Joyce Atkinson was serving as a Specialist (4th Class) with the United States Army in Hawaii. On March 26, during the second trimester of her pregnancy, she reported to Tripler Army Medical Center ("Tripler"), complaining of blurred vision, hypertension, and edema. The staff at Tripler did not treat her and told her to go home. Three days later, Atkinson returned to Tripler, complaining of dizziness, nausea, and hypertension. Again, the Tripler staff merely told her to go home. Two weeks later, Atkinson returned to Tripler complaining of severe abdominal pain and hypertension. Finally, she was hospitalized for pre-eclampsia, a condition occurring in pregnancy that is life-threatening to both mother and fetus because of associated kidney failure, high blood pressure, stroke, and premature birth. She claims that as a result of this negligent medical treatment, she delivered a stillborn child and suffered physical and emotional injuries of her own.

Atkinson filed a malpractice suit against the government under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674 (1982), alleging that she "suffered great pain of body and mind and sustained serious and permanent bodily injuries as a result of the negligence of defendant's agents, employees and/or representatives in failing to properly diagnose her condition and hospitalize, treat, monitor and care for her."[1] The United States filed a motion to dismiss for failure to state a claim upon which relief may be granted, for judgment on the pleadings, and for summary judgment. The district court, finding that Atkinson was injured in the course of "activity incident to service," held that the United States was immune from malpractice liability. Thus, the district judge granted the motion for summary judgment in a judg-

---

1. Atkinson's claims for injuries to her child are not at issue here. The parties have reached a settlement on those claims.

ment filed April 23, 1985, from which Atkinson filed this timely appeal.[2]

## II. DISCUSSION

■ Determination of the district court's subject matter jurisdiction is a question of law reviewable novo on appeal. *Redding Ford v. California State Bd. of Equalization*, 722 F.2d 496, 497 (9th Cir.1983), *cert. denied*, 469 U.S. 817, 105 S.Ct. 84, 83 L.Ed.2d 31 (1984).

■ The FTCA, passed by Congress in 1946, represents the culmination of a long effort to mitigate the unjust consequences of the common law sovereign immunity doctrine which protected the United States from tort liability. *Feres v. United States*, 340 U.S. 135, 139, 71 S.Ct. 153, 156, 95 L.Ed 152 (1950). Reacting against the notion that the sovereign could do no wrong, Congress provided in the FTCA that the United States is liable in tort "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674 (1982). Congress did not exclude military personnel from FTCA coverage. The statute "provide[s] for District Court jurisdiction over *any* claim founded on negligence brought against the United States.... '[A]ny claim' [does not] mean[ ] 'any claim but that of servicemen.'" *Brooks v. United States*, 337 U.S. 49, 51, 69 S.Ct. 918, 919, 93 L.Ed. 1200 (1949).

Despite this "sweeping," legislatively established waiver of immunity, *United States v. Yellow Cab Co.*, 340 U.S. 543, 547, 71 S.Ct. 399, 402, 95 L.Ed. 523 (1951), in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Supreme Court created a judicial exception to Congress's general rule of governmental liability. This exception, informally known as the *Feres* doctrine, immunizes the government from liability under the FTCA "for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. at 159. The three rationales later identified as the foundation for this doctrine were: (1) the distinctively federal nature of the relationship between the government and members of its armed forces, which argues against subjecting the government to liability based on the fortuity of the situs of the injury; (2) the availability of alternative compensation systems; and (3) the fear of damaging the military disciplinary structure. *See Stencel Aero Eng'g Corp. v. United States*, 431 U.S. 666, 671–72, 97 S.Ct. 2054, 2057–58, 52 L.Ed.2d 665 (1977).

In our previously issued opinion, we noted that subsequent cases had stated that the third rationale of the three listed above is determinative. *Chappell v. Wallace*, 462 U.S. 296, 299–300, 304, 103 S.Ct. 2362, 2365, 2367, 76 L.Ed.2d 586 (1983) (stating that *Feres* is best explained by the military discipline rationale); *Monaco v. United States*, 661 F.2d 129, 132 (9th Cir.1981) (" '[T]he protection of military discipline ... serves largely if not exclusively as the predicate for the *Feres* doctrine.... Only this factor can truly explain the *Feres* doctrine and the crucial line it draws....' ") (quoting *Hunt v. United States*, 636 F.2d 580, 599 (D.C.Cir.1980)), *cert. denied*, 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982); *see also Johnson v. United States*, 704 F.2d 1431, 1436 (9th Cir.1983) (stating that safeguarding military discipline is the fundamental rationale for immunity).[3] In-

---

**2.** The district judge's order was incorrect procedurally. When a court determines that the United States is immune from liability under the FTCA, the proper disposition is a dismissal for lack of subject matter jurisdiction, not a grant of summary judgment. *Broudy v. United States*, 661 F.2d 125, 128 n. 5 (9th Cir.1981). This error is of no consequence. Since properly viewed, this case involves an appeal from an order dismissing the action for want of jurisdiction, we accept as true, for purposes of appeal, the factual allegations contained in Atkinson's complaint. *Id.* at 126 n. 1.

**3.** These cases noted (1) that the special federal relationship rationale is undermined by the fact that FTCA suits are permitted between members of other federally created agencies and departments, and (2) that the availability of an alternative compensation system does not afford a justification for the *Feres* doctrine, but merely renders it more palatable. *See Johnson*, 704 F.2d at 1435.

An additional rationale suggested in *Feres* —the absence of parallel private liability—has apparently been abandoned. *Compare Feres*, 340 U.S. at 141–42, 71 S.Ct. at 157, *with United States v. Johnson*, —— U.S. ——, 107 S.Ct. 2063,

deed, we noted that in *United States v. Shearer,* 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), the Supreme Court specifically stated that the first two rationales are "no longer controlling." *Id.* at 58 n. 4, 105 S.Ct. at 3043 n. 4. We also noted *Shearer's* instruction that courts should take a case-by-case, rather than a *per se,* approach to claims of immunity. *Id.* at 57, 105 S.Ct. at 3043 ("The *Feres* doctrine cannot be reduced to a few bright-line rules; each case must be examined in light of the statute as it has been construed in *Feres* and subsequent cases."). Thus, in light of the novel situation posed by a pregnant service-woman, we asked whether "[t]he facts of this case, viewed in light of the *Feres* doctrine's underlying disciplinary rationale, lead us to conclude that the FTCA does permit [Atkinson's] cause of action." *Johnson,* 704 F.2d at 1436. We reasoned:

> [W]e fail to see how Atkinson's suit for negligent care administered in a non-field military hospital incident to her pregnancy can possibly undermine "the need for unhesitating and decisive action by military officers and equally disciplined responses by enlisted personnel." *Chappell v. Wallace,* 462 U.S. 296, 304 [103 S.Ct. 2362, 2367, 76 L.Ed.2d 586] (1983). At the time Atkinson sought treatment, she was "not subject in any real way to the compulsion of military orders or performing any sort of military mission." *Johnson,* 704 F.2d at 1439. No command relationship exists between Atkinson and her attending physician. No military considerations govern the treatment in a non-field hospital of a woman who seeks to have a healthy baby. No military discipline applies to the care a conscientious physician will provide in this situation. Thus, in treating Atkinson for complications of her pregnancy, Atkinson's doctor was implementing decisions of military judgment only in the remotest sense. . . .

Moreover, the circumstances of this case simply "do not involve the sort of close military judgment calls that the *Feres* doctrine was designed to insulate from judicial review." *Johnson,* 704 F.2d at 1440. We are not dealing with a case "where the government's negligence occurred because of a decision requiring military expertise or judgment." *Id.* Thus, a court hearing Atkinson's claim will not have to inquire into "complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force." *Gilligan v. Morgan,* 413 U.S. 1, 10 [93 S.Ct. 2440, 2446, 37 L.Ed.2d 407] (1973). The care provided a pregnant woman hardly can be considered to be distinctively military in character. In short, Atkinson's injuries have nothing to do with her army career "except in the sense that all human events depend upon what has already transpired." *Brooks,* 337 U.S. at 52 [69 S.Ct. at 920]. There is simply no connection between Atkinson's medical treatment and the decisional or disciplinary interest protected by the *Feres* doctrine.

Accordingly, we reversed the judgment of the district court and reinstated Atkinson's claims.

While the government's petition for rehearing was pending, the Supreme Court decided *United States v. Johnson,* —— U.S. ——, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987). In *Johnson,* a five-Justice majority affirmed the core holding of *Feres* that " 'the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service' " and barred a suit arising from the death of a Coast Guard helicopter pilot who was killed while performing a rescue mission due to the alleged negligence of a civilian federal radar controller. *Id.* at 2069 (quoting *Feres,* 340 U.S. at 146, 71 S.Ct. at 159). Significant for our purposes is the Court's articulation, with apparent approval, of all three rationales associated with *Feres. Id.* at 2065 n. 2, 2068–69. Simply put, *Johnson* appears to breathe new life into the first

2065 n. 2, 2068–69, 95 L.Ed.2d 648 (1987) (omitting reference), *and id.* at 2071 (Scalia, J., dissenting).

two *Feres* rationales, which until that time had been largely discredited and abandoned. *See id.* at 2071–72 (Scalia, J., dissenting) (noting the *Shearer* statement that the first two rationales are "no longer controlling").

In view of these circumstances, we are compelled to affirm the decision of the district court on the basis of *Feres* and *Johnson*. Although we believe that the military discipline rationale does not support application of the *Feres* doctrine in this case,[4] the first two rationales support its application. *Griggs v. United States*, 178 F.2d 1, 2 (10th Cir.1949), *rev'd sub nom. Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); *Jefferson v. United States*, 77 F.Supp. 706, 708 (D.Md.1948), *aff'd*, 178 F.2d 518 (4th Cir.1949), *aff'd sub nom. Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

Four Justices now believe that *Feres* was wrongly decided. *Johnson*, 107 S.Ct. at 2074 (Scalia, J., dissenting) (*"Feres* was wrongly decided and heartily deserves the 'widespread, almost universal criticism' it has received.") (quoting *In re "Agent Orange" Prod. Liability Litig.*, 580 F.Supp. 1242, 1246 (E.D.N.Y.), *appeal dismissed*, 745 F.2d 161 (2d Cir.1984)). We recognize that Atkinson's case is distinguishable on its facts from *Johnson*. The helicopter rescue mission in the latter case more obviously falls within the key phrase "activity incident to service" than does the medical treatment of a pregnant servicewoman in a non-field hospital. We also note that Atkinson's case differs in some respects from the malpractice situation in *Feres* itself.[5]

We are nonetheless reluctant to carve out an exception to the *Feres* doctrine after five members of the Court appear to have emphatically endorsed *Feres* and all three of its rationales. That task, if it is to be undertaken at all, is properly left to the Supreme Court or to Congress.

NOONAN, Circuit Judge, concurring:

The opinion of the court states cogently why the court issued its first opinion and why in deference to *United States v. Johnson* the court has withdrawn that opinion. The court also registers the unease caused by the judicial gloss on the congressional waiver of sovereign immunity. I concur in the opinion of the court and write to emphasize other anomalies caused by the application of *Feres*.

*First.* Common sense suggests that a single tortious act should not result in different legal consequences for different victims. *Feres* dictates differently. *United Air Lines v. Wiener*, 335 F.2d 379, 404 (9th Cir.) *cert. dismissed*, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964) (civilian passengers recover, servicemen passengers do not when an Air Force plane negligently hits a commercial airliner). So here the government settles the claim of the estate of Baby Atkinson and refuses the claim of the baby's mother.

*Second.* To visit the status of a parent upon a child and so bar recovery by the child seems to be as primitive as punishing a child for his or her parents' fault—an outmoded and unconstitutional procedure. See *Levy v. Louisiana*, 391 U.S. 68, 88

---

4. Indeed, the *Feres* Court itself did not articulate the military discipline rationale, which was first suggested in later cases. *See Johnson*, 107 S.Ct. at 2071, 2073 (Scalia, J., dissenting) (noting the "later-conceived-of 'military discipline' rationale").

5. First, the *Feres* Court is unlikely to have had in mind medical treatment of pregnant servicewomen in 1950. *See* 10 U.S.C. § 505 (1982) (admitting women into the regular armed forces as of 1978). To the extent that pregnant women should be accorded the highest degree of medical care because of the central role of the family in our society, application of the *Feres* doctrine promotes a particularly unjust policy that Congress is unlikely to have intended. Second, ef-

fective in 1976, Congress granted military doctors and medical personnel immunity from personal liability for malpractice. *See* 10 U.S.C. § 1089 (1982 & Supp. III 1985). This action further diminishes the extent to which a suit for damages might adversely affect the discipline underlying the relationship between a service member and a higher ranking medical officer. Third, the *Feres* Court rejected the analogy between a private individual and the government in part because "no private individual has power to conscript or mobilize a private army." *Feres*, 340 U.S. at 141–42, 71 S.Ct. at 157. As we have already pointed out, this rationale appears to have been abandoned. *See supra* note 3.

S.Ct. 1509, 20 L.Ed.2d 436 (1968). Under *Feres* a child with no connection with military service and no duty of military obedience is barred from recovering for an injury when the injury was incurred through government-inflicted injury on the child's enlisted parent. *Monaco v. United States*, 661 F.2d 129 (9th Cir.1981) (birth-defective child of serviceman exposed to radiation denied recovery). That the government did not invoke this rule against Baby Atkinson is a tribute to its humanity but does little to mitigate the harshness of the general rule.

*Third.* A mother of a child is not merely an individual. She is in a relationship—a relationship that affects her existence. The child she is carrying is not of course a portion of her body like a limb or an organ. Such a notion was common in nineteenth century biology. See, e.g., *Dietrich v. Inhabitants of Northampton*, 138 Mass. 14 (1884) (per Holmes, J.). The notion has been exploded by twentieth-century advances in biology and fetology. W. Liley, **"Experiments with Uterine Fetal Instrumentation"** in M. Kaback and C. Valenti, eds. *Intrauterine Fetal Visualization* (1976) 75. The child, as Liley has concluded, "is responsive to touch, pain and cold." *Id.; see also,* M. Rose, **"The Secret Brain: Learning Before Birth"**, *Harper's*, April 1978, 46. But the child while a living sentient organism distinct from his or her maternal carrier has changed that carrier's being irrevocably. She is now a mother. The relationship is not merely histological. Interaction and interrelationship occur. Enriched in her existence, a mother has a relational dimension that should not be ignored. Although she is a servicewoman, a mother cannot be confined to her military status. With her new relationship she has a new status, which, as the opinion of the court suggests, could be the basis for acknowledging that, at least as to her, the sovereign's statutory waiver of immunity should hold and the sharp surgery of *Feres* be suspended.