**Jimmy Ray ROGERS and Linda Rogers, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 89–1520.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1990.

Decided May 25, 1990.

James R. Earnshaw, Harding, Henthorn & Harris, Crawfordsville, Ind., for plaintiffs-appellants.

Deborah J. Daniels, U.S. Atty., Harold R. Bickham, Asst. U.S. Atty., Office of the U.S. Atty., Indianapolis, for defendant-appellee.

Before BAUER, Chief Judge, and CUMMINGS and KANNE, Circuit Judges.

CUMMINGS, Circuit Judge.

This appeal involves a suit filed against the United States under the Federal Tort Claims Act (FTCA) by a former member of the armed services. Jimmy Ray Rogers thought his service days were long past when he was arrested on a desertion charge and held for nearly two months awaiting trial by court-martial. He was acquitted of the desertion charge and then sued under the FTCA. Because the injuries alleged by Rogers and his wife, Linda Rogers, were the direct product of a military relationship we affirm the district court's holding that the *Feres* doctrine, named for *Feres v. United States*, 340 U.S.

135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), bars the claims.

## I.

This Court has jurisdiction over this appeal because dismissal of an action for lack of subject matter jurisdiction is a final judgment. 28 U.S.C. § 1291. In reviewing the grant of a motion to dismiss for lack of subject matter jurisdiction, we must consider as true all of the plaintiffs' factual allegations. *Walls v. United States*, 832 F.2d 93, 94 (7th Cir.1987).

Just after he turned 18 in November 1976, Jimmy Ray Rogers joined the United States Navy. He signed up for a four-year stint. After boot camp and some preliminary training, but before the first year was up, Rogers decided the Navy was not for him. He requested to be relieved of all service obligations under an experimental early release program. Navy command and personnel officials agreed to discharge Rogers. They set a discharge date of September 6, 1977. Rogers was then a boatswain's mate on the USS Guadalcanal, based in Norfolk, Virginia. He asked to leave his Norfolk assignment one week in advance of his discharge date. He wanted to share a ride to Florida with a shipmate who happened to be driving that way.

Rogers says he received permission from his master-at-arms to leave on August 31, 1977. He asserts that he was told by Navy officials that the Navy would forward his final paperwork by mail to his mother in Kentucky. On August 31, 1977, Rogers turned in his identification card, uniforms, and seabag and left his base. Rogers says that he considered himself released from all obligations to the Navy, though he admits knowing that the formality of preparing discharge papers had yet to occur (Transcript of Proceedings at Trial ("Tr.") at 55).

Final papers were apparently never produced, however, and Rogers was classified by the Navy as a deserter. About six months after leaving the base, Rogers was picked up by FBI agents in Florida. Rogers asserts that he was held because of his status as a deserter (Tr. at 23). He says he spent nine days in a Florida jail and was then extradited to Kentucky on an unrelated civilian charge (*id.*). Rogers contends that the Navy was alerted to the fact that he was being held but that a Navy representative told civilian officials that he could be released (Tr. at 25).

On January 16, 1986, a police officer in Crawfordsville, Indiana, where Rogers was living with his wife and small child, pulled Rogers over for having a faulty muffler on his car. A routine record check revealed Rogers' listed status as a deserter. Over his protests that he had been honorably discharged, Rogers was transported to the Naval Training Center at Great Lakes, Illinois. Following a probable cause hearing, he was held there as a detainee in the Naval Brig until March 10, 1986. The Navy then conducted a trial by court-martial at which Rogers was found not guilty of desertion. Following that proceeding, the Navy issued an honorable discharge to Rogers and awarded him "back pay" for the two months he was held in pretrial confinement. The plaintiffs submit that while Rogers was confined he was fired from his civilian job as a machine operator back in Crawfordsville, though he was reinstated two weeks following his release from confinement.

After the Navy denied an administrative claim, Rogers and his wife filed suit under the FTCA, 28 U.S.C. §§ 1346(b), 2401(b), 2402, 2671–2680, which waives sovereign immunity for the United States. Those for whom immunity is waived include "members of the military or naval forces of the United States * * * acting in line of duty." 28 U.S.C. § 2671. The plaintiffs seek damages for false arrest, false imprisonment, negligent record-keeping, and loss of consortium.

The plaintiffs claim that the Navy was negligent in three ways: failing to process Mr. Rogers' formal discharge upon his physical release in 1977; failing to keep records that would have prevented his confinement in 1986; and failing to take action to have him released after he was arrested in 1986. The Navy responds, first, that the *Feres* doctrine bars this action and, second,

that the plaintiffs have failed to allege facts that would support an actionable case under the FTCA for the torts listed in the complaint. Regarding the *Feres* issue, the plaintiffs argue that in a case in which, "with the exception of the final paperwork, * * * the serviceman is authorized to leave the service, he becomes 'discharged' and no longer subject to the harsh deprivation of a legal remedy which results under *Feres*" (Plaintiff's Br. at 17).

A one-day bench trial was held on May 20, 1988. The district court issued an opinion and judgment reluctantly dismissing the suit for lack of subject matter jurisdiction on January 11, 1989. The district court relied on the *Feres* doctrine in dismissing the suit.

## II.

The FTCA generally lifts the traditional barrier against any finding of tort liability on the part of the federal government. "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, * * *." 28 U.S.C. § 2674. Thus the federal courts are open to claims against the government where the government may be liable "for money damages * * * for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, * * *." 28 U.S.C. § 1346(b).

The Supreme Court holds, however, that this legislative consent of the sovereign to allow itself to be sued contains an implied exception. Military service members may not recover under the FTCA for injuries that "arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146, 71 S.Ct. at 159. The Court began its *Feres* opinion by noting the absence of legislative history on the FTCA that could simplify its duty of statutory construction. *Id.* at 138, 71 S.Ct. at 155. The Court then proceeded to find three factors, discussed below, to support its view that Congress did not intend to allow

service members injured "while on active duty and not on furlough" to sue the government for the "negligence of others in the armed forces." *Id.* These factors, which overlap to some extent, demonstrated that the FTCA was not intended as a vehicle for such a "radical departure from established law." *Id.* at 146, 71 S.Ct. at 159.

First, there is no private analog to the relationship between the government and a service member. The government could not be held liable to service members "in the same manner and to the same extent as a private individual under like circumstances," as stated in the FTCA. *Id.* at 141–142, 71 S.Ct. at 156–157 (citing 28 U.S.C. § 2674). Congress did not express an intent "to visit the Government with novel and unprecedented liabilities." *Id.* at 142, 71 S.Ct. at 157.

Second, it would be peculiar to rely on the tort laws of the various states—as the FTCA provides in 28 U.S.C. § 1346(b)—to define the duties of the federal government to members of its armed forces since "[t]he relationship between the Government and members of its armed forces is 'distinctively federal in character.'" *Id.* at 142–144, 71 S.Ct. at 157–158 (quoting *United States v. Standard Oil Co.*, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947)). It "makes no sense" to use divergent state laws as the rules of decision in suits involving the armed services, in part because this would unfairly subject a service member to the law of the place where he is involuntarily stationed. *Id.* 340 U.S. at 143, 71 S.Ct. at 158.

Third, Congress had already created "systems of simple, certain, and uniform compensation" for injuries and death suffered by service members and veterans, which would make FTCA liability redundant. *Id.* at 144–145, 71 S.Ct. at 158–159. Moreover, most states provide workers' compensation for work-connected injuries. *Id.* at 143, 71 S.Ct. at 158.

A fourth reason, perhaps implicit in the first *Feres* rationale of avoiding "unprecedented liabilities," was later articulated by the Court. Congress could not have meant

to jeopardize military discipline and effectiveness by permitting suits for service-related injuries. *United States v. Shearer,* 473 U.S. 52, 59, 105 S.Ct. 3039, 3043, 87 L.Ed.2d 38 (1985); *United States v. Brown,* 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954).

Arguments in favor of discarding or modifying the implied exception to the FTCA set forth in *Feres* have been frequently advanced by commentators and judges, including dissenting justices. See, *e.g., United States v. Johnson,* 481 U.S. 681, 701 n. *, 107 S.Ct. 2063, 2074 n. *, 95 L.Ed.2d 648 (1987) (Scalia, Brennan, Marshall, Stevens, JJ., dissenting) (collecting critical opinions and articles). Nevertheless the exception has been repeatedly reaffirmed by a majority of the Court, most recently in *Johnson.* In that case the Court held that the *Feres* doctrine may defeat suits against alleged tortfeasors other than the military, thus barring the FTCA suit filed against civilian federal flight controllers by the widow of a Coast Guard helicopter pilot killed during a rescue mission.

As the Ninth Circuit has noted, rationales sustaining the *Feres* doctrine—aside from apparent congressional acquiescence to the Court's *Feres* doctrine over the last 40 years—have shifted somewhat over time. *Atkinson v. United States,* 825 F.2d 202, 204–206 (9th Cir.1987) (contrasting reasoning and language in such cases as *Feres, Shearer,* and *Johnson* ), certiorari denied, 485 U.S. 987, 108 S.Ct. 1288, 99 L.Ed.2d 499 (1988). The first rationale, the absence of parallel private liability, has apparently been abandoned. See *Johnson,* 481 U.S. at 684 n. 2, 107 S.Ct. at 2065 n. 2 (majority omits reference); *id.* at 694–695, 107 S.Ct. at 2070–2071 (Scalia, Brennan, Marshall, Stevens, JJ., dissenting) (citing cases rejecting rationale). On the other hand, as the Ninth Circuit in *Atkinson* accurately perceived, *Johnson* "appears to breathe new life" into the two remaining rationales relied upon by the *Feres* Court: the implausibility that Congress would rest the liability of a federal military command to its service members upon varying state tort laws; and the availability of alternative compensation systems. *Atkinson,* 825 F.2d at 205–206, quoted by this Court in *Walls v. United States,* 832 F.2d 93, 95 (1987). Thus two of the original *Feres* rationales remain applicable, as well as the discipline rationale.

■ The discipline rationale was emphasized in *United States v. Shearer,* 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), the Supreme Court case that most resembles this appeal. In *Shearer* a private was off duty and away from his Army base when he was kidnapped and murdered by another private. The victim's mother sued under the FTCA, claiming that the Army knew that the killer was dangerous before he killed her son and that the Army should have controlled the killer and warned others of his violent propensities. All of the Justices who participated in *Shearer* joined that section of Chief Justice Burger's opinion in which he rejected the argument that the claim should fall within the FTCA because the victim was off duty and away from his base when he was murdered. The Court stated: "[T]he situs of the murder is not nearly as important as whether the suit requires the civilian court to second-guess military decisions * * * and whether the suit might impair essential military discipline * * *." *Shearer,* 473 U.S. at 57, 105 S.Ct. at 3042 (citations omitted). The Court explained that *Feres* stands for the principle that the FTCA may not be used to challenge "basic choices about the discipline, supervision, and control of a serviceman." *Id.* at 58, 105 S.Ct. at 3043. Thus in determining whether *Feres* is applicable to a given case courts are to pay special attention to the question of whether these negative effects on the military are a likely result.

Application of the two remaining *Feres* rationales to this case raises two questions that call for some degree of speculation. The first question is this: Would Congress leave to state law the determination of the liability of the government to service members for false arrest, false imprisonment, and negligent record-keeping? To the extent Congress might have been concerned with the unfairness of subjecting service

members to the law of a state to which the service members were involuntarily assigned by the military, that concern would not be raised if the law of Indiana were used in this case.[1] Rogers was living, as a civilian and by choice, in Indiana at the time of his arrest. More generally, however, it seems unlikely that Congress would desire that the laws of various states regarding false arrest, false imprisonment, and negligent record-keeping be used to regulate military procedures. Unlike negligence in operating vehicles or practicing medicine, negligent classification of service members by the United States Navy cannot have many parallels in state case law.

The second question is this: Is there any alternative federal or state law system under which the plaintiffs could conceivably be compensated? The plaintiffs say there is not (Plaintiffs' Br. at 9). The government takes no position. For the purposes of this appeal we will assume that the plaintiffs are correct.

█ Thus we are left with a compelling argument under the rationale most favored in recent years by the Supreme Court—military discipline—in favor of application of the *Feres* doctrine, an uncertain result on the logic of applying state law, and an assumption that there exists no alternative compensation system for these plaintiffs. We conclude that the *Feres* doctrine is applicable, largely because a tort suit against the military for false imprisonment where the confined plaintiff has not received final discharge is the type of claim that, "if generally permitted," would threaten "military discipline and effectiveness." See *Shearer*, 473 U.S. at 59, 105 S.Ct. at 3043.

One commentator has described three separate "discipline" concerns identified by courts: disruption of the military through factual inquiries by civilian courts, discouragement of effective military decision-making due to fear of damage awards, and promotion of disobedience by soldiers.

Schwartz, *Intramilitary Tort Law*, 95 Yale L.J. 992, 1003–1008 (1986). Each of these concerns would be implicated if the armed services could be second-guessed in their determinations of when a service member is no longer a service member. Testimony taken in this case illustrates how deeply a civil court might be required to delve into such tomes as the Naval Military Personnel Command Manual and the Enlisted Transfer Manual (Tr. at 95–96, 103) to determine whether the Navy has acted negligently in determining that Rogers had not been discharged from the Navy. Resolution of this suit would require evaluation of the manner in which various Navy personnel performed their duties under the relevant military regulations. See *McGowan v. Scoggins*, 890 F.2d 128, 139 (9th Cir.1989) (Sneed, J., concurring). The injury complained of occurred while Rogers was held by the Navy awaiting a trial by court-martial because naval authorities were not satisfied that he had been discharged from the Navy. The Navy considered Rogers to be subject to its control and discipline.

The question in this case is not whether there was a proximate relationship between the activities of Rogers at the time of his injuries and the Armed Forces. There was no such proximate relationship; Rogers was living as a civilian far in time and place from his former assignment with the Navy. The question is instead whether Rogers stood in the sort of relationship to the Navy at the time of his arrest and pretrial confinement that those incidents arose out of activity incident to service. To the Navy Rogers was not on furlough or otherwise living on his own time. He was a deserter. If the Navy is subject to judicial review for making an error under these circumstances, service members in the future might be encouraged to litigate in the civil courts disputes over their military status.

---

**1.** It is not immediately clear, however, which state's law would be applied: that of Illinois (substantial confinement), Indiana (arrest and initial confinement), Virginia (initial release from service and record-keeping), or even the District of Columbia (record-keeping and coor-

dination of personnel policies of the Department of the Navy). See *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (FTCA suit for injury in one state resulting from negligence in second state).

Persuasive authority supports this holding. In *Maw v. United States*, 733 F.2d 174 (1984), the First Circuit was presented with the claim of a service member that his arrest for failure to report to the Army was the result of negligence on the part of an Army captain. The First Circuit held that the *Feres* doctrine was applicable because all of the relevant issues of the case were bound up in the military roles of the parties and witnesses. *Id.* at 176. The fact that the Army captain in *Maw* may in fact have been quite negligent in failing to rescind the orders requiring Maw to report was irrelevant to the question of whether *Feres* applied. In this case, the fact that the Navy appears to have been remiss in its recordkeeping and failure to react more quickly to the plaintiffs' predicament does not prevent the *Feres* doctrine from barring this action.

Also persuasive is *Garrett v. United States*, 625 F.2d 712 (5th Cir.1980), certiorari denied, 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981), another case involving an ex-service member plaintiff suing for damages in tort under the FTCA. The plaintiff alleged that he had been illegally and negligently detained by the Marine Corps for two months pending formal discharge following expiration of his enlistment. The plaintiff claimed in *Garrett*, as the plaintiffs do here, that *Feres* did not apply because he was not on active duty at the time of the alleged injury. The Court held that the *Feres* doctrine was triggered because the plaintiff had been detained as a result of his activities as a marine. *Id.* at 714. While the facts of the present case are more dramatic and may cast a more negative light on the procedures of the Navy, the holding of *Garrett* is applicable.

Applying the *Feres* rule to Rogers, a "nearly" discharged sailor temporarily confined years after his release from service, is in a broad sense also analogous to the decision of the Ninth Circuit in *Monaco v. United States*, 661 F.2d 129 (1981), certiorari denied, 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982). There a father and daughter sued under the FTCA, claiming that the father's exposure to radiation while stationed at the University of Chicago during the "Manhattan Project" resulted in the father developing cancer of the colon and the daughter being born with a severe birth defect. The Court held that the government's negligence occurred while the father was on active duty, not during the years following his discharge while the cancer developed. *Id.* at 133. In the present case, the Navy's initial error appears to have been in failing to properly classify Rogers on his purported exit from the Navy. Like an incipient cancer cell, that mistake would release its harm years later.

Our reluctance to allow for a relaxation of the *Feres* doctrine in this case turns in part on the fact that the plaintiffs have not attempted to refute the government's position that Rogers was never given final discharge papers. The district court found that the discharge papers were not completed (district court op. at 2), and the plaintiffs on appeal do not question that finding (Plaintiff's Br. at 12). Thus we do not hold that the armed services are beyond the reach of the civil court system under the FTCA in any case in which the discharge status of the service member is in doubt.

That circumstance distinguishes this case from *Valn v. United States*, 708 F.2d 116 (3d Cir.1983). There the plaintiff alleged that he had been involuntarily activated by the Army despite his earlier receipt of a valid honorable discharge for medical reasons. The Third Circuit stated: "Unlike the situation where a plaintiff is a *soldier* suing his military superiors for injuries arising out of or in the course of military duty, Valn is a *civilian* suing the government for injuries arising out of its dealings with Valn as a private citizen." *Id.* at 120 (emphasis in original). *Valn* stands for the principle that the military may not use the *Feres* doctrine as a shield against a suit filed by a plaintiff who was, by the military's own admission, validly discharged at the time of the injury. This follows *United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, in which the Court held that *Feres* did not apply to a claim against the United States by a veteran who was discharged because

of an injury to his knee when the alleged negligence occurred in the treatment of the knee by Veterans Administration physicians following discharge. The Court noted that "[t]he injury occurred after his discharge, while he enjoyed a civilian status." *Id.* at 112, 75 S.Ct. at 143. Civilians who happen to be veterans, validly discharged from the military, deserve access to the same remedies available to other civilians for injuries that occur following discharge. Their suits, like the suits of other civilians against the military, do not call into play the issues of discipline, supervision, and control to nearly the same degree as would suits by service members.

The court-martial verdict in this case was that Jimmy Ray Rogers was not guilty of the military crime of desertion. That result does not stand as conclusive proof that the Navy did not have cause to believe that Rogers was not a validly discharged former service member when he was arrested in Crawfordsville in 1986. Had Jimmy Ray Rogers obtained his final discharge papers prior to his arrest he would have stood in the same shoes as any other civilian not subject to Navy control and discipline.

In two opinions cited by the plaintiffs, the Fifth Circuit has failed to apply the *Feres* doctrine to claims by service members whose discharges may not have been formally completed at the time of the injuries for which they sought relief under the FTCA. *Adams v. United States,* 728 F.2d 736 (5th Cir.1984); *Bankston v. United States,* 480 F.2d 495 (5th Cir.1973). The results in each of those cases, however, appeared to rest in part on the fact that the service members sued for medical malpractice claims against federal hospitals. The Court was concerned that a contrary holding in that context would require that "any former serviceman who failed to report for formal discharge proceedings could receive medical treatment for the rest of his life at

government expense—a result which would fly in the face of equity and common sense." *Adams,* 728 F.2d at 739–740. There is no concern in the context of this case that service members will be encouraged to attempt to manipulate an uncertain military status in order to receive medical treatment to which they are not entitled.[2] Finally, as the Fourth Circuit recently had occasion to note, such cases as *Adams* may have less significance "in *Johnson's* wake." *Appelhans v. United States,* 877 F.2d 309, 313 (1989).

The plaintiffs argue that the government's position is absurd because it may be reduced to the contention that the *Feres* doctrine applies *because the Navy was negligent* in failing to see that Mr. Rogers' name was removed from its list of alleged deserters. Sovereign immunity may produce harsh results; the sovereign can, of course, do wrong. In this case the harshness was intensified because Mr. Rogers was confined pending the trial by court-martial that absolved him. Enlistment in the armed services, like marriage, is a contract which changes the enlistee's legal status. *In re Grimley,* 137 U.S. 147, 150, 11 S.Ct. 54, 55, 34 L.Ed. 636 (1890). Since Rogers was not given his final discharge papers he was, in the eyes of the Navy, still bound by that contract.

After the trial in this case, the district judge specifically found that the Navy had lacked any justification for keeping Rogers confined in the brig for 55 days pending his military trial and that the Navy complicated the case needlessly by losing his personnel file (Tr. at 118). These and other findings led the judge to say on the record: "[T]he government owes you a heartfelt apology, Mr. Rogers, and since I am a representative of the government I will apologize for the government." (Tr. at 120).

---

**2.** *Feres* itself consolidated three appeals, two of which involved *medical malpractice claims. Feres,* 340 U.S. at 137, 71 S.Ct. at 155. Thus the Fifth Circuit decisions cannot be read as creating a special exception for medical malpractice claims. Instead they involve the Fifth Circuit's determination that where the military's treatment of an individual suggests a service status

tantamount to discharge for the purposes of denying medical treatment, it would be nonsensical to bar recovery under the FTCA. In other words, if an individual is a civilian for the purposes of medical benefits, he is a civilian for the purposes of medical negligence. Without adopting that reasoning, we offer it as an explanation for the result in those cases.

Having found the Navy's conduct lacking, however, the court applied the law as it must. This Court is constrained to reach the same result. For all of the paperwork the Navy devotes to discharging members, it is fully capable of making errors of omission, if not commission. Remedies for such mistakes, however, have traditionally been left in the hands of military authorities directly answerable to the executive branch and funded by the legislative branch. Congress has not altered that tradition.

The plaintiffs assert that the government has waived its argument regarding the intentional tort exception to the FTCA, 28 U.S.C. § 2680(h). Given the applicability of the *Feres* doctrine, we need not reach the waiver question.

### III.

As attenuated as it was, the relationship between Rogers and the Navy was not formally terminated until he received his discharge papers following the trial by court-martial. Therefore his regrettable confinement falls within the *Feres* doctrine, and the judgment of the district court is affirmed.